COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Elder and Bumgardner
Argued at Alexandria, Virginia


STEPHEN GLEN McCORD

MEMORANDUM OPINION[*] BY
v.    Record No. 1714-98-4    JUDGE RUDOLPH BUMGARDNER, III
JULY 27, 1999

KAREN SUE McCORD


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

Robert B. Machen for appellant.

Peter M. Fitzner (John P. Snider; Matthews,
Snider, Norton & Fitzner, on brief), for
appellee.


Stephen G. McCord appeals the divorce decree granting Karen
Sue McCord spousal support. He alleges the trial court erred in
(1) failing to consider the appropriate statutory factors; (2)
using pendente lite support guidelines instead of the statutory
guidelines; (3) failing to consider the impact of the equitable
distribution award on his ability to pay; (4) failing to
consider the actual needs of the wife; and (5) failing to impute
income to the wife. Finding no error, we affirm the trial
court's award.

We view the evidence in the light most favorable to the
wife and will not disturb the court's decision unless it is

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

plainly wrong or without evidence to support it. See Carter v. Carter, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982). So viewed, the evidence established that the parties married in 1983, and the husband adopted the wife's daughter in 1988. They separated in 1996, and since then the wife has resided in her parents' home in Maryland. The husband and the daughter have resided in the marital home, a three-bedroom home in Falls Church.

The forty-five-year-old wife had a high school diploma and worked full time until 1990 earning $27,000 annually as an office manager for the Department of Navy. She was a GS-8 civilian governmental employee with 19.5 years of service. The forty-four-year-old husband had a college degree and worked as a Navy contract specialist earning approximately $81,000. In 1990, the parties agreed that the wife would quit her job. The husband believed she would pursue her education; she believed she would spend time with her daughter. The husband paid the bills, and the wife took care of her daughter, housekeeping, and the garden. From 1993 until the parties separated, the wife worked part-time earning $8 per hour in a doctor's office.

Pursuant to a property settlement agreement, the husband bought the wife's equity in the marital home for $34,500, and awarded her twenty-five percent of his pension. He also paid her $4,500 because she liquidated a pension during the marriage to pay for his Jeep and household bills. The husband's current

-

monthly expenses include $1,566 on the mortgage, $1,000 to the wife, and the eighteen-year-old daughter's living expenses.  He had a credit card balance of approximately $6,000.

The wife testified that upon moving to Maryland she submitted several dozen resumes to medical offices, responded to newspaper advertisements, and inquired about government employment.  In October 1996, a friend told her she could be reinstated at a GS-5 or GS-6 level and revest her pension.  However, no government positions were available for her.

In June or August 1997, the wife started working part-time at a doctor's office, first at twelve and then at twenty-six hours per week.  She earned $788 per month, and full-time work may be forthcoming.  The wife did not submit any employment applications for the three months prior to accepting her current employment.  She has not furthered her education and has no intention of doing so.  Her monthly expenses of $2,606.65 included anticipated costs of $675 per month in rent and $250 in health insurance.

The husband contends that the wife was capable of earning $30,000 per year with the government and chose not to do so.  He testified that upon re-employment with the government, she could buy back her pension right, and after eleven years she would have full retirement benefits by age fifty-five.  He alleged she did not accept re-employment because of the cost to reinstate the pension.

-

First, we consider whether the trial court erred in determining that spousal support was appropriate.  The trial court must consider the statutory factors of Code § 20-107.1, but is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors."  Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986).

In awarding the wife spousal support, the trial court highlighted some of the factors it considered significant.  It found that the parties both contributed to the family's well-being during the thirteen-year marriage, the husband had greater earning capacity, the wife left full-time employment in 1990 with the husband's consent, their current employment was the same as before the separation, and both were in good health.  The court is not required to recite each statutory factor.  Because its finding was based on the evidence, we find no abuse of discretion.  See id.

Next, we consider whether the court erred in setting the amount of the award.  The husband contends that the court failed to consider his ability to pay and to consider the wife's actual need.  In setting a support award, the court must consider the statutory factors of Code § 20-107.1, see Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1990), and balance the wife's financial needs, her age and health, and her ability to earn against the husband's ability to pay, considering his

income and his ability to earn.  See Via v. Via, 14 Va. App. 868, 870, 419 S.E.2d 432, 433 (1992).  The amount awarded will not be disturbed on appeal unless plainly wrong or without evidence to support it.  See Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997).

The husband has failed to show that the amount of support was not commensurate with the guidelines used by the trial court.  Contrary to his assertion, the court was aware of his monthly income and expenses.  Based on the evidence of both parties' income and expenses, their respective earning capacity, the standard of living during the marriage, the duration of the marriage, the contributions of each to the well-being of the family, and the fact that both parties are employed in the same capacity as when they separated, we find no error.

The husband also contends the court failed to consider the wife's actual needs.  He specifically notes that the wife's expenses include rent and health insurance that she is not currently paying.  In setting support awards, courts must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future."  Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990) (quoting Young v. Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)).

The evidence showed that the wife's expense report was based on circumstances in the reasonably near future.  She

-

planned to rent an apartment and testified that rent in the area was approximately $675 per month. Upon divorce, she would have to pay her own health insurance. The wife's expenses of $2,606 were not purely speculative. Our review of the record reveals no evidence that the court abused its discretion in determining the amount of the support award.

Finally, we consider whether the trial court erred in failing to impute income to the wife. In setting spousal support, a court may impute income to a party voluntarily underemployed. See Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994); Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (en banc). Whether a person is voluntarily underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider [the parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children." Niemiec v. Dept. of Soc. Servs., Div. of Child Support Enforcement, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998). Furthermore, the husband has the burden of proving that the wife was voluntarily foregoing more gainful employment. See id.

The husband mentioned that the wife could work at a GS-5 or GS-6 level. However, he did not know the salary ranges or if opportunities were actually available. He presented no evidence

-

regarding wife's specific skills or the value of those skills. The wife testified that she looked for full-time employment and wanted to move out of her parents' home. The evidence showed that the wife was leading a lifestyle below the one she was accustomed to during the marriage. The husband failed to establish that the wife was voluntarily underemployed or that she had rejected full-time employment.

The trial court found that the wife worked part-time as she had prior to the parties' separation, that there existed a possibility that she could work full-time in her current employment, and that the husband had greater earning capacity and the ability to pay. The evidence supports the refusal to impute income to the wife.

For the foregoing reasons, we affirm the trial court's award of spousal support.

Affirmed.

-